# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| GARY L. PEAVY, | CASE NO. 11cv1434-LAB (WVG) |
|---|---|
| Plaintiff, | **ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*;** |
| vs. | |
| | **ORDER DISMISSING COMPLAINT; AND** |
| DOCTOR CAIN, et al., | **ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL** |
| Defendant. | |

Plaintiff Gary Peavy, formerly a prisoner in state custody, filed his complaint bringing claims pursuant to 42 U.S.C. § 1983 against seventeen Defendants. Peavy also filed a motion to proceed *in forma pauperis* (IFP) pursuant to 28 U.S.C. § 1915(e), and a motion for appointment of counsel.

**I.    IFP Application**

The Court has reviewed the IFP application, finds that Peavy is without money to pay the filing fee, and **GRANTS** his motion to proceed IFP. Having done so, the Court is required to screen the complaint and to dismiss it to the extent it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. *See* § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Because Peavy is proceeding *pro se*, the Court construes his pleadings liberally, *see Eldridge v. Block*, 832

F.2d 1132, 1137 (9th Cir. 1987), but even a liberal construction does not supply elements Peavy has not pleaded. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## II.     Mandatory Screening

Peavy brings this action against prison officials pursuant to 42 U.S.C. § 1983. To the extent he might be bringing supplemental state law claims, *see Ashker v. Calif. Dept. of Corrections*, 112 F.3d 392 (9th Cir. 1997) (discussing when supplemental state law claims may be brought against state officials sued in federal court), he has not alleged compliance with the California Tort Claims Act's exhaustion requirement. Any claim for prospective injunctive relief has become moot, because Peavy is no longer incarcerated.

Several of the Defendants were supervisors or were told about alleged violations. A defendant is not liable under § 1983 unless he personally participated in the alleged deprivation of the plaintiff's rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002). Supervisors may be liable, however, if they act in a manner deliberately indifferent to a plaintiff's rights. *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011). To establish deliberate indifference, the plaintiff must show the official was both "aware of facts from which the inference could be drawn that a substantial risk of [a rights violation] exists, and he must also draw the inference." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (quotation omitted).

### A.     Medical Claims

Peavy alleges several of the Defendants were involved in some way in denying him medical care. To recover for an Eighth Amendment violation based on withholding of medical care, Peavy must both allege and prove each Defendant from whom he seeks relief were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, the prison official must know of, and disregard, an excessive risk to the patient's health and safety. *Toguchi v. Chung*, 391 F.3d 1051, 1057–1058 (9th Cir. 2004). The prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but actually draw the inference. *Id.* A plaintiff must also show that the deliberate indifference resulted in harm.

*McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (citing *Shapley v. Nevada Board of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)).

The complaint doesn't allege what the medical condition was, whether it was serious, whether any of the Defendants knew it was serious, whether any of the Defendants knew medical care should have been given instead of withheld or delayed, or what harm (if any) resulted. In some cases, it is clear Defendants didn't withhold medical care, but merely referred Peavy to another Defendant. The complaint's paragraphs addressing withholding of medical care are ¶¶ 9 (alleging Defendant Amador refused to let him go to sick call), 21 (alleging Defendant Seriano refused to give him a pass to sick call, telling him he had waited too late, and told him instead to get the pass from the sergeant), 23 (alleging Defendant Garcia intercepted him when he was going to ask the sergeant for a sick call pass and told him he was supposed to be attending a substance abuse program class), and 25 (alleging that when Peavy arrived at the substance abuse class and asked Defendant Webb for a pass, Webb told Peavy to ask Amador).

Based on the allegations, it appears Defendant Amador, a program assessment technician for the prison substance abuse program, thought Peavy was malingering (Complaint, ¶ 9) and the other Defendants deferred to her decision without exercising their own authority. It also appears Peavy asked for a sick pass at a time he was expected to be at a substance abuse program class, leading some of the Defendants to believe he wasn't really sick and was instead looking for an excuse to skip class. If they did believe this, even if they were wrong, they were not deliberately indifferent. Peavy has not alleged facts showing they knew he was genuinely seriously ill and in need of immediate medical care.

Peavy also alleges Defendants Hawkins and Doe 2[1] assigned him to work that was dangerous to him to perform because of an unstated medical condition. He alleges a doctor

---

[1] The complaint refers to two Defendants as Lt. John Doe, in ¶¶ 16, 17, 34, and 35. The caption lists them separately, and the allegations assign them different roles, so it appears they are two different people. The Doe referred to in ¶¶ 16 and 17 will therefore be designated Doe 1 in this order, and the Doe referred to in ¶¶ 34 and 35 will be referred to as Doe 2 for purposes of convenience. Whether they are the same person or different people makes no difference to the Court's ruling in this order.

1  had given him a "limited duty" chrono but that these two Defendants ordered him to perform
2  work that conflicted with this chrono, exposing him to "an unreasonable risk of serious
3  damage to my future health." (*See* ¶¶ 32–35.) These allegations are insufficient because
4  they don't say what the chrono said, what the work was, whether either Defendant knew the
5  assigned work conflicted with the doctor's orders, and what harm resulted.

6  Peavy also makes very generalized allegations against Defendant Dr. Cain. (Compl.,
7  ¶¶ 12–13.) All he says of the violation is that on July 28, 2009, he 'was denied serious
8  medical attention by Doctor Cain. Doctor Cain has denied me before[.] I just don't have the
9  record yet." These vague remarks provide no information about what happened or why it
10 constituted an Eighth Amendment Violation. These allegations don't comply with Fed. R.
11 Civ. P. 8's pleading requirements.

### B.   Rules Violation Proceeding

The complaint alleges that Peavy was unjustly found guilty of a rules violation as a result of a conspiracy among several of the Defendants. According to the complaint, because Defendant Amador thought Peavy was malingering (Compl., ¶ 9 ("she told me that I'm always at sick call")) and in retaliation conspired with Defendants Dark, Almaguer, and Garza to accuse him falsely of a rules violation. (*Id.*) The accusation was that Peavy showed an expired medical activity card in order to avoid his work assignment, and as a result he was removed from the substance abuse program. (*Id.*) He also accused Garza, another substance abuse program officer, of falsely testifying that he attempted to use the expired medical activity card to try to pick up medication. (*Id.*, ¶ 11.)

Peavy also accuses Defendants Branch (Compl., ¶ 15), Marshall (¶ 3, 17), Doe 1 (¶ 17), and Armstrong (¶ 19) of doing nothing to help him after he told them he had falsely been accused. He doesn't show they knew he was falsely accused, or which of them had authority to do anything about it.

Peavy's claim is in fact an appeal of the rules violation decision; if the decision was correct, he can have no claim. This is not a situation where a prisoner might be bringing a procedural due process claim without attempting to appeal the decision itself; the allegations

here are that the only evidence presented at the hearing was perjured and wrongly led to the decision against him.

Before appealing a rules violation decision, Peavy was required to exhaust his administrative remedies. *See Nichols v. Logan*, 355 F. Supp. 2d 1155, 1161–64 (S.D.Cal., 2004). There is no exception to this requirement. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). The complaint doesn't allege Peavy did this, and in fact it tends to suggest he didn't. In particular, paragraph 17 describes his intention to abandon his appeals because "time was running out." If he did abandon his appeals instead of completing them as required, his claims are barred.

### C. Armstrong Remedial Plan Violations

Peavy accuses Defendants Arbini, Rathwick, and Gillem of failing to comply with the Armstrong Remedial Plan,[2] by not assigning him desirable work activities he was entitled to participate in because of an unstated disability. (Compl., ¶¶ 26–31.) A claim that a defendant has violated the Armstrong Remedial Plan does not give rise to a claim for damages under § 1983. *Brown v. Calif. Dept. of Corrections*, 2010 WL 3835854, slip op. at *2 (E.D.Cal., Sept. 29, 2010). Claims for injunctive relief are now moot because Peavy has been released from custody. Furthermore, any claims for equitable relief must be pursued through counsel for the class. *See Ervin v. Calif. Dept. of Corrections & Rehabilitation,* 2011 WL3503164, slip op. at *2 (E.D.Cal., Aug. 10, 2011) (citing *Frost v. Symington*, 197 F.3d 348, 359 (9th Cir.1999)).

### III. Motion for Appointment of Counsel

Because the complaint is being dismissed, and because it appears Peavy could reasonably articulate any valid claims he may have without the assistance of an attorney, his motion for appointment of counsel is **DENIED WITHOUT PREJUDICE**.

///

---

[2] The Armstrong Remedial Plan refers to a remedial order issued in *Armstrong v. Davis*, No. 94cv2307-CW by the U.S. District Court for the Northern District of California. *Martin v. Yates*, 2010 WL 5330485, slip op. at *1 n.2 (E.D.Cal., Dec. 20, 2010) (citing *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997)). The order enjoined discrimination against disabled inmates in California prisons.

**IV.     Conclusion and Order**

For these reasons, the complaint is **DISMISSED WITHOUT PREJUDICE**. His claims arising from alleged violations of the Armstrong Remedial Plan are **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**. If Peavy wishes to amend his complaint, he must file his amended complaint no later than **Wednesday, January 4, 2012.** He must not include any claims dismissed without leave to amend. His amended complaint must also remedy all the defects identified in this order. To the extent his amended complaint does not remedy a defect this order has identified, the Court will assume the defect cannot be remedied by amendment.

**If Peavy does not file an amended complaint within the time permitted, this action will be dismissed without leave to amend.**

The complaint did not list Peavy's address in the caption, as required under Civil Local Rule 5.1(j)(1). His IFP application gives his prison address as his current address in the caption, and apparently the Clerk used this as his address for docketing purposes. Paragraph 1 of the complaint provides an address in San Diego, however, and the Clerk is directed to replace Peavy's prison address in the docket with this, his current address.

**IT IS SO ORDERED**.

DATED: December 7, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge